## Hochman, Appellant, v. Kuebler.

*Landlord and tenant—Abandonment by tenant—Rights of landlord— Presumption of possession—Repairs—Re-letting.*

1. Where a tenant, during the term, abandons the demised premises, the landlord is not bound, under the penalty of loss of his right to receive rent, to permit the tenement to remain wholly unoccupied with the consequent possible or probable loss of his insurance, destruction by waste, or other like injuries. The mere fact that he resumes possession is not of itself a sufficient foundation upon which to predicate either an acceptance of a surrender or an eviction. It must further be found on evidence that such resumption of possession is not merely for the protection of the property during the absence of the tenant, but is adverse to a reoccupation of it by him and a renewal of the relations created by the lease. So too, if during the period of abandonment the landlord should make some repairs of the demised premises, or even sublet to another, these acts would be in the interest of the tenant who had committed a breach of the covenants of his lease, and would tend to minimize the damages which he would otherwise be liable to pay.

2. In an action by a vendee of a landlord against a tenant and his sureties for rent, it appeared that the plaintiff found the premises

vacated by the tenant. The evidence showed that he went and secured the key from the person with whom it had, been left, and that he went to the tenant to secure either the lease or a copy of it. He entered into negotiations with a new tenant for the premises, on certain conditions as to securing a license which were not afterwards fulfilled; and he made some improvements or repairs to the property of a more or less expensive character. *Held,* that it was reversible error for the trial judge to charge the jury so as to make no distinction between possession of the vacated premises taken by the landlord merely to protect the property, or to minimize the damages that would follow the tenant's abandonment, and a possession which would be adverse to any resumption of occupation by the tenant and thus amount to an eviction.

Argued Dec. 3, 1912. Appeal, No. 91, Oct. T., 1912, by plaintiff, from judgment of C. P. Northampton Co., July T., 1911, No. 8, on verdict for plaintiff in case of Isaac B. Hochman v. William J. Kuebler et al., trading as W. Kuebler's Sons. Before RICE, P. J., HENDERSON, MORRISON, HEAD and PORTER, JJ. Reversed.

Assumpsit for rent. Before STAPLES, P. J., specially presiding.

At the trial it appeared that on November 24, 1909, Joseph A. Buettner leased a property in Easton to A. J. Ulmer for a term of three years. W. Kuebler Sons, the defendants, became sureties for the rent. On December 24, 1910, the plaintiff, Isaac B. Hochman, purchased the premises from Buettner. The plaintiff found that the premises, which had been a licensed saloon, had been vacated by Ulmer after he had lost his license. The evidence showed that the plaintiff went to a person named Gies who had the keys, and took possession of them and also went to Ulmer and asked him for the lease or a copy of it. There was also evidence that plaintiff had negotiated with one A. O. Shiery to rent the premises, if the latter should secure a license. The license was not obtained, however, by Shiery, and the negotiations fell through. It also appeared that plaintiff had made some improvements and repairs to the property. Subsequently Hochman succeeded in procuring another tenant. Suit was

brought against the sureties of Ulmer to recover rent from January 1, 1911, when it was last paid to May 1, 1911, when the new tenant had been obtained.

The court charged in part as follows:

[The plaintiff in this case stands in the shoes of the original lessor of real estate and a landlord, or the lessor of real estate who takes the property back, accepts the possession of it, and whether delivered to him actually or whether delivered to him symbolically, or in a way which is equivalent to an actual delivery can no longer collect any rent for the premises in question, and we say to you, that if Mr. Hochman, the plaintiff in this case, by his acts took this property back that he has no right to his claim for rent.] [1]

[Did Kuebler have the right to surrender the possession of that property? He was the surety. Now what is there in the case which would warrant you in the conclusion that he had the right to give it up? In the light of all the evidence in the case, we say we do not remember that he had such complete possession of the property as would have given him the right to surrender it. He could as surety say what he did, but in the opinion of the court he had not the full power to surrender the premises.] [2]

[Now we say to you that if he went to Ulmer and asked him for the lease with the idea of taking possession of the premises, and that he took the lease from Ulmer in that way, that notwithstanding the fact that he was in bankruptcy, there being no evidence that the trustee in bankruptcy had made any effort to take possession of these premises, if he took that lease from Ulmer with the idea of taking possession of the premises, then we say to you that it was such an acceptance or taking back of the property as would prohibit him from collecting any part of this rent.] [3]

[You will notice, gentlemen, that the term of this lease ran for three years. Now if he didn't take this property back in January as claimed by the defendant in this case,

then what right had he to lease it at all in January, even though the term of the lease was not to commence until April 1, because if he did not accept the return of the lease, and if he didn't take possession of the property and consider it as his, and the lease canceled, then what right had he to lease or take possession of it at all?

We say to you that that is an important fact to be considered in the case. He could not blow hot and cold. He either took possession of that property entirely, or he didn't take possession of it at all, and if he didn't take possession of it at all, what right had he to lease it from April 1, 1911?] [4]

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* were above instructions, quoting them.

*C. F. Smith,* of *Smith, Paff & Laub,* for appellant.— After abandonment by tenant during term efforts of the landlord to rent the premises are not evidence of acceptance of surrender of term, nor are repairs such evidence: Reeves v. McComeskey, 168 Pa. 571; Auer v. Penn, 99 Pa. 370; Breuckmann v. Twibill, 89 Pa. 58; Lipper v. Bouvé, 6 Pa. Superior Ct. 452; Snyder v. Henry, 32 Pa. Superior Ct. 167; Smucker v. Grinberg, 27 Pa. Superior Ct. 531; Pier v. Carr, 69 Pa. 326; Lane v. Nelson, 167 Pa. 602.

*Parke H. Davis,* for appellee.

OPINION BY HEAD, J., April 29, 1913:

When the defendant voluntarily abandoned the demised premises during the term, as he himself declares he did, he of course did not relieve himself or his sureties from the obligation to perform the covenant to pay rent. That liability could be discharged only by the act of the landlord, either in accepting a surrender of the lease or doing some act which had the legal effect of an

eviction. The present action was for the recovery of rent reserved in the lease. The defendants, the sureties of the tenant, make defense on both of the grounds indicated.

It has uniformly been held that where a tenant, during the term, abandons the demised premises, the landlord is not bound, under the penalty of loss of his right to receive rent, to permit the tenement to remain wholly unoccupied with the consequent possible or probable loss of his insurance, destruction by waste, or other like injuries. The mere fact that he resumes possession is not of itself a sufficient foundation upon which to predicate either an acceptance of a surrender or an eviction. It must further be found on evidence that such resumption of possession is not merely for the protection of the property during the absence of the tenant, but is adverse to a reoccupation of it by him and a renewal of the relations created by the lease. So too, if during the period of abandonment the landlord should make some repairs of the demised premises, or even sublet to another, these acts would be in the interest of the tenant who had committed a breach of the covenants of his lease, and would tend to minimize the damages which he would otherwise be liable to pay. This is the doctrine of all of the cases, as a few short excerpts will sufficiently show. In Pier v. Carr, 69 Pa. 326, it was said: "Taking care of the key of the house and repairing the floor after the tenant had voluntarily left, were no eviction. He would have been entitled to enter if he had returned—but he did not return. He was neither put out nor sold out by the plaintiff. If the acts of the plaintiff would have been no defense in defendant's favor, it would not avail the surety, and we are very clear they would not have availed him." In Smucker v. Grinberg, 27 Pa. Superior Ct. 531, RICE, P. J., thus stated the law on the subject: "Was there an acceptance of a surrender or an eviction? A surrender of demised premises, in order to be effectual to release a tenant from payment of rent, must be accepted by the lessor, and the burden of proof

is on the lessee. A tenant for years cannot relieve himself from his liability by vacating the demised premises during the term and sending the key to his landlord. The landlord is not bound, in relief of his tenant who had abandoned the premises, to rent them to anyone who may apply, but may rent them and hold the tenant for the difference unless he has accepted a surrender. Nor is his entry to make repairs after the tenant has abandoned the premises either an acceptance of a surrender or an eviction." In Snyder v. Henry, 32 Pa. Superior Ct. 167, this court speaking by PORTER, J., said: "Nothing is better settled in Pennsylvania than that a tenant for years cannot relieve himself from liability under his covenant to pay rent by vacating the demised premises during the term, and sending the key to his landlord: Auer v. Penn, 99 Pa. 370; Gardiner v. Bair, 10 Pa. Superior Ct. 74; Hastings v. Burchfield, 28 Pa. Superior Ct. 309. The fact that the landlord, when a tenant has abandoned the property and left it vacant, takes possession and repairs the house, does not discharge the tenant from his covenant to pay rent: Breuckmann v. Twibill, 89 Pa. 58; Snyder v. Middleton, 4 Philadelphia, 343." Many of the numerous cases on the subject are cited in the opinions quoted from, and, as already stated, they are harmonious and uniform.

The plaintiff in the present case was the vendee of the landlord who had entered into the lease. By his purchase of the demised property he took the place of the former landlord and was entitled to receive the rent. When he found the premises vacated by the tenant he went and secured the key from the person with whom it had been left. He also went to the tenant to secure either the lease itself or a copy of it, the evidence being in some conflict as to this. He entered into negotiations with a new tenant for the premises, on certain conditions as to securing a license which were not afterwards fulfilled, and he made some improvement or repairs to the property of a more or less extensive character.

Now these acts of the landlord, coupled with the alleged declarations made by him at the time indicative of his purpose, were competent evidence to go to the jury under proper instructions from the court to enable them to determine whether or not, with the assent of the landlord, the lease had been extinguished. The instructions should have been in accord with the doctrine already stated, so that the jury would not be misled into unduly magnifying the consequences of certain acts of the landlord, which were entirely consistent with his right to still hold the tenant and his sureties for any loss of rent consequent upon the abandonment of the demised premises by the tenant. We cannot square the instructions of the learned trial judge with the rule laid down in the cases. In the portion of the charge which is the subject of the fourth assignment of error, he said: "Now if he (the landlord) didn't take this property back in January as claimed by the defendant in this case, then what right had he to lease it at all in January, even though the term of the lease was not to commence until the first day of April, because if he didn't take possession of the property and consider it as his and the lease canceled, then what right had he to lease or take possession of it at all?" Thus no distinction is made between possession of the vacated premises, taken by the landlord merely to protect the property or to minimize the damages that would follow the tenant's abandonment, and a possession which would be adverse to any resumption of occupation by the tenant and thus amount to an eviction. To a greater or less degree this error pervades the entire charge. The fourth assignment is sustained.

We are not persuaded the fact that the tenant had become a bankrupt at or about the time he abandoned the demised premises has much significance in the disposition of the question at issue between the parties. The fact of the bankruptcy only appears in a casual way in this record. There is no evidence that the lease of the alleged bankrupt was considered by his trustee or his creditors

as an asset of any value to his estate. The landlord had a right to consider the abandonment of the demised premises, followed by the delivery to him of the written lease, if that be the fact, as evidence of the willingness of the tenant to surrender the remainder of his term. The question then arose whether the landlord acted upon that indirect or implied surrender and agreed to accept it, thus relieving the tenant and his sureties from any further obligation to pay rent.

With the correction of the material error disclosed in the fourth assignment, the remaining matters complained of will cease to be important, and, as we view it, merit no further consideration at this time.

Judgment reversed and a venire facias de novo awarded.