J-A28029-23

2024 PA Super 63

| | | |
|---|---|---|
| 1700 MARKET STREET ASSOCIATES, L.P. BY ITS GENERAL PARTNER, SRI ELEVEN 1700 MARKET HOLDINGS REIT LLC, AND 1700 PROPERTY OWNER, LLC | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : | |
| v. | : : : | No. 1314 EDA 2023 |
| COMMON GROUNDS 1700 MARKET STREET, LLC AND COMMON GROUNDS HOLDINGS, LLC | : : : | |

Appeal from the Order Entered April 20, 2023
In the Court of Common Pleas of Philadelphia County
Civil Division at No:  02451 May Term 2022

BEFORE:   OLSON, J., STABILE, J., and COLINS, J.[*]

OPINION BY STABILE, J.:                    **FILED APRIL 1, 2024**

Appellants, 1700 Market Street Associates, L.P., SRI Eleven 1700 Market Holdings REIT, LLC, and 1700 Property Owner, LLC (collectively "Appellants") appeal from the award of $223,000 in damages entered in this commercial lease case following a non-jury trial.  Appellants contend that the trial court erred in finding Appellees, Common Grounds 1700 Market Street, LLC and Common Grounds Holdings, LLC (collectively "Appellees"), were evicted, and thus erred in not awarding Appellant its actual damages of $2,149,435.75.  We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

Appellants and Appellees entered into an Agreement of Lease ("Lease") dated July 2, 2019, whereby Appellees leased 62,428 square feet of Appellants' premises for use as a coworking space ("the premises").[1] The initial term of the Lease was eleven years. Lease, 7/1/19, ¶ 2(b). Appellee paid Appellants $2,500,000.00 for the security deposit and agreed to pay base monthly rent of $171,677.00, increasing by 2.5% each year. *Id.* ¶ 2(c), (d). Additionally, Appellees were responsible for "additional rent" defined as operating expenses and tax expenses. *Id.* at ¶ 7(a), (b). Under the terms of the Lease, Appellants provided Appellees $4,588,030.00 as a tenant improvement allowance, with the option for a supplemental allowance of $2,010,340.00. *Id.* at ¶ 55(a), (b). If Appellees opted for the supplemental allowance, it would be amortized into the monthly rent. *Id.*

Initially, rent was abated for the first ten months of the first year. *Id.* at 2(c). On December 9, 2020, the parties executed a First Amendment to Agreement of Lease ("First Amendment"), which confirmed the Lease commenced on February 20, 2020, and extended the abatement period to January 20, 2021. First Amendment, 12/9/20, ¶ B, D, 2.

The Lease provided that an event of default of the Lease would include, *inter alia*, failure to pay rent timely. Lease, 7/1/19, ¶ 25(a)(1). If an event of default occurred, the Lease provided for the following remedies:

---

[1] The premises was defined as the 23rd and 24th floors of 1700 Market Street, Philadelphia, Pennsylvania.

1. Landlord may terminate Tenant's right to possession of the Premises at any time by written notice to Tenant. . . .

Upon such termination in writing of Tenant's right to possession of the Premises, this Lease shall terminate and Landlord shall be entitled to recover damages from Tenant as provided in any applicable existing or future Legal Requirement providing for recovery of damages for such breach, including but not limited to the following:

   (i)     The reasonable cost of recovering the Premises; plus

   (ii)    The reasonable cost of removing Tenant's Alterations, trade fixtures and improvements; plus

   (iii)   All unpaid rent due or earned hereunder prior to the date of termination, less the proceeds of any reletting or any rental received from subtenants prior to the date of termination . . .; plus

   (iv)    The amount by which the rent which would be payable by Tenant hereunder, including Additional Rent . . . as reasonably estimated by Landlord, from the date of termination until the date of the award of damages. . .; plus

   (v)     The amount by which the rent which would be payable by Tenant hereunder, including Additional Rent . . . as reasonably estimated by Landlord, for the remainder of the then term, after the date of the award of damages . . .; plus

   (vi)    Such other amounts in addition to or in lieu of the foregoing as may be permitted from time to time by applicable law, including without limitation any other amount necessary to compensate Landlord for all the detriment proximately caused by Tenant's failure to perform its obligations under this Lease or which in the ordinary course of things would be likely to result therefrom.

2. Landlord may continue this Lease in full force and effect and may enforce all of its rights and remedies under this Lease, including, but not limited to, the right to recover rent as it becomes due. After the occurrence of an Event of Default,

- 3 -

Landlord may enter the Premises without terminating this Lease and sublet all or any part of the Premises for Tenant's account to any person, for such term (which may be a period beyond the remaining term of the Lease), at such rents and on such other terms and conditions as Landlord deems advisable.

\* \* \* \*

5. Landlord may cure the Event of Default at Tenant's expense, it being understood that such performance shall not waive or cure the subject Event of Default. If Landlord pays any sums or incurs any expense in curing the Event of Default, Tenant shall reimburse Landlord upon demand for the amount of such payment or expense with interest at the Interest Rate from the date the sum is paid or the expense is incurred until Landlord is reimbursed by Tenant. Any amount due Landlord under this subsection shall constitute additional rent hereunder.

Lease, 7/1/19, ¶ 25(b). The Lease also contained a confession of judgment clause:

1. Tenant covenants and agrees that if there is an Event of Default and this lease is terminated the term thereof is terminated or expires, then, Landlord **may, without limitation, cause judgments in ejectment for possession of the premises** to be entered against Tenant and, for those purposes, **Tenant hereby grants the following warrant of attorney**: (I) Tenant hereby irrevocably authorizes and empowers any prothonotary, clerk of court, attorney of any court of record and/or Landlord (as well as some one [sic] acting for Landlord) in any and all actions commenced for recovery of possession of the premises to appear for Tenant and confess or otherwise enter judgment in ejectment for possession of the premises against Tenant and all persons claiming directly or indirectly by, through or under Tenant, and thereupon **a writ of possession may forthwith issue and be served, without any prior notice**, writ or proceeding whatsoever; (II) if, for any reason after the foregoing action or actions shall have been commenced, it shall be determined that possession of the premises should remain in or be restored to Tenant, Landlord shall have the right to commence one or more further actions as hereinbefore set forth to recover possession of the premises, including, without limitation, appearing for Tenant and

- 4 -

confessing or otherwise entering judgment for possession of the premises as hereinbefore set forth.

2. Tenant hereby acknowledges that by agreeing to the foregoing confession of judgment and warrant of attorney, **Tenant waives the right to notice and a prior judicial proceeding** to determine its rights and liabilities, and further acknowledges that Landlord may, on default by Tenant under the lease, subject to such notice requirements, if any, as are herein expressly provided, obtain a judgment against Tenant for ejectment without any opportunity of Tenant to raise any defense, setoff, counterclaim or other claim that Tenant may have, and that **Tenant knowingly, voluntarily and intelligently grants Landlord the foregoing right to confess judgment and warrant of attorney as an explicit and material part of the consideration bargained for** between Tenant and Landlord. Tenant certifies that it has been represented by (or has had the opportunity to be represented) at the signing of this lease and in the granting of this confession of judgment and warrant of attorney by independent legal counsel, selected of its own free will, and that it has had the opportunity to discuss the confession of judgment and warrant of attorney with counsel. Tenant further certifies that it has read and understands the meaning and effect of the foregoing confession of judgment and warrant of attorney. Tenant further acknowledges that this lease is a commercial transaction, and that the relationship between Landlord and Tenant created hereunder is commercial in nature. Tenant further waives all rights under, and agrees that Landlord shall have no obligations to tenant pursuant to, the provisions of 20 Pa.C.S. § 5601.3(b).

Lease, 7/1/19, ¶ 25(c) (emphasis added).[2]

On March 9, 2021, Appellants sent a written notice of default to Appellees due to unpaid rent for March 2021. N.T., 1/9/23, at 30-31. Appellees were provided an opportunity to cure the default, and they did not. *Id.* at 31. A second notice of default was sent on February 3, 2022, and

---

[2] The First Amendment included an identical confession of judgment clause. First Amendment of Lease, 12/9/20, ¶ 6(c).

Appellees were again provided an opportunity to cure and they did not. *Id.* at 31-32.

On March 21, 2022, Appellants filed a Landlord and Tenant Complaint in Philadelphia Municipal Court, seeking possession of the premises and money judgment in the amount of $2,498,499.73, itemized as follows:

| | |
|---|---|
| Unpaid Rent March 2021–Feb 2022 (calculated at $207,302.52 / month) | $2,487,630.24 |
| Electric | $7,502.24 |
| Attorney's Fees | $1,500.00 |
| Other | $1,740.00 |
| Court Costs | $127.73 |
| TOTAL | $2,498,499.73 |

Landlord and Tenant Complaint, 3/21/22. On May 10, 2022, judgment was entered in favor of Appellants in the amount of $3,065,058.72, as well as judgment for possession of the premises.[3] On May 26, 2022, Appellees filed an appeal to the Court of Common Pleas of Philadelphia County.

Thereafter, on June 9, 2022, Appellants filed a complaint for breach of contract seeking damages and possession of the premises. Appellants sought damages in the amount of $3,238,504.15 - $2,500,000.00 to replenish the security deposit and $783,504.15 in unpaid rent and additional rent – plus ongoing rent and additional rent as it accrues. Complaint, 6/9/22, ¶ 11. Appellants also requested judgment in ejection for possession of the premises. *Id.* at ¶ 15.

---

[3] The docket indicates Appellees' counsel was present, but it does not indicate if there was a hearing or argument prior to the entry of judgment.

Following a non-jury trial, the trial court entered judgment in favor of Appellants in the amount of $223,000.00, the amount due to Appellants up to July 1, 2022 when it regained possession of the premises. Trial Court Opinion, 4/20/23, at 3. Appellants filed a post-trial motion and asserted that the trial court erred in determining Appellants were not entitled to actual damages because it did not confess judgment or seek accelerated rent. Post-Trial Motion, 1/20/23, ¶ 10-13. Specifically, Appellants argued they were entitled to actual damages of $2,149,435.75, the amount of unpaid rent due at the time judgment was entered. *Id.*, ¶ 7(f). The trial court denied Appellants' post-trial motion, finding that Appellants ejected Appellees from the premises and, therefore, were only entitled to unpaid rent until Appellants regained possession of the premises. Trial Court Opinion, 4/20/23, at 3. Appellants filed a motion for reconsideration, which was denied. This appeal followed.

Appellants raise the following issues for our review:

1. Did the Trial Court err by not awarding Landlord damages including both past due rent and rent as it accrues for the remainder of the term of a commercial least until judgment, less any mitigation if required, because contract law is designed to put the non-breaching party in the same position that it would be in if the breaching party had complied with the lease without permitting any double recovery of damages?

2. Did the Trial Court misapply the law by limiting and capping Landlord's damages as of the date landlord obtained possession rather than awarding Landlord its actual damages that continued to accrue under the terms of the lease until judgment after trial?

3. Did the Trial Court err in finding that the Tenant had been evicted rather than voluntarily vacating the premises and erred

by not applying the law related to a tenant's voluntarily vacating a commercial premise?

Appellants' Brief at 4. We will address the issues together because they are interrelated.

Our standard of review in a non-jury trial is

to assess whether the findings of facts by the trial court are supported by the record and whether the trial court erred in applying the law. Upon appellate review[,] the appellate court must consider the evidence in the light most favorable to the verdict winner and reverse the trial court only where the findings are not supported by the evidence of record or are based on an error of law. Our scope of review regarding questions of law is plenary.

*Woullard v. Sanner Concrete & Supply*, 241 A.3d 1200, 1207 (Pa. Super. 2020) (internal citation omitted). "Findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury." *Shaffer v. O'Toole*, 964 A.2d 420, 422 (Pa. Super. 2009), *appeal denied*, 981 A.2d 220 (Pa. 2009) (internal citation omitted).

This Court, almost 100 years ago, declared that a landlord cannot evict a tenant and then recover both the possession of the property and the rent for the balance of the term. *See Greco v. Woodlawn Furniture Co.*, 99 Pa. Super. 290, 292 (1930). However, if the tenant abandons the property, the landlord is entitled to possession and accelerated rent:

The distinction must always be made between possession of vacated premises taken by the landlord merely to protect the property or minimize the damages that would follow the tenant's abandonment, and a possession which would be adverse to any resumption of occupation by the tenant and thus amount to an eviction.

- 8 -

*Id.* (internal quotation and citation omitted). "[A] landlord must elect whether to confess judgment for possession and for all monies then due, or to confess judgment for all monies due for the entire term." ***Homart Dev. Co. v. Sgrenci***, 662 A.2d 1092, 1101 (Pa. Super. 1995) (*en banc*). "The landlord . . . cannot . . . enter judgment for possession and for all mon[ie]s which would otherwise be due as rents through the end of the term." ***Id.*** Thus,

> [i]f the landlord terminates the lease and evicts the tenant before the acceleration clause is enforced, the landlord cannot recover rent for the post-eviction period. If the landlord collects accelerated rent and receives possession of the property by abandonment, the landlord may keep the accelerated rent, but is required to account to the tenant for rent received from a new tenant.

***Ferrick v. Bianchini***, 69 A.3d 642, 656 (Pa. Super. 2013). The legal crux of this matter is whether Appellants evicted Appellees or whether Appellees abandoned the premises.

Appellants argue that Appellees abandoned the premises, and no evidence was presented to show Appellees were evicted. Appellants' Brief at 19. Thus, Appellants contend they are entitled to actual damages, defined as rent and additional rent due through the date of trial, less any applicable mitigation. ***Id.*** at 15-16. Appellants attempt to distinguish ***Homart*** on the ground that the case involved confessed judgments, and here, Appellants did not file for a confessed judgment. However, this is not a meaningful distinction. The basic tenet of our civil justice system remains the same

- 9 -

regardless of whether judgment was confessed – a plaintiff may not obtain a double recovery for a single wrong. **Homart**, 662 A.2d at 1100.

To establish abandonment of a lease, the landlord must prove: (1) an intention to abandon; and (2) conduct by which the intention is carried through. **See Ferrick**, 69 A.3d at 656. Conversely, an eviction is possession of a property by a landlord "which would be adverse to any resumption of occupation by the tenant." **Greco**, 99 Pa. Super. at 292. Pennsylvania's Landlord Tenant Act, 68 P.S. §§ 250.101-250.602, was enacted in 1951 and "is a comprehensive regulatory scheme governing the landlord and tenant relationship. It sets up a procedure whereby a landlord may repossess [the] premises if he has a right to evict the tenant." **Fraport Pittsburgh, Inc. v. Allegheny Cnty. Airport Auth.**, 296 A.3d 9, 19 (Pa. Super. 2023) (internal quotations and citations omitted). "It is intended that [the Landlord Tenant Act] shall furnish a complete and exclusive system in itself," and repealed all inconsistent acts. 68 P.S. § 250.602.

To evict a tenant, landlords must comply with the procedure established in the Landlord Tenant Act. A complaint for possession must be filed in a municipal court or with the magistrate court, and "[i]f it appears that the complaint has been sufficiently proven, the [judge] shall enter judgment against the tenant that the real property be delivered up to the landlord." 68 P.S. § 250.503(a)(1). Five days after judgment is entered, the landlord may request, and the judge shall issue, a writ of possession for the premises. **See**

68 P.S. § 250.503(b). "This writ is to be served within no later than forty-eight hours and executed on the eleventh day following service upon the tenant of the leased premises." ***Id.***

The record demonstrates that Appellants followed this procedure to legally evict Appellees from the premises. On March 21, 2022, Appellants filed a landlord tenant complaint in Philadelphia Municipal Court seeking unpaid rent and possession of the premises. N.T., 1/9/23, at 48. On May 10, 2022, Appellants obtained a judgment for possession and a monetary judgment for unpaid rent. ***Id.*** On May 31, 2022, Appellants obtained a writ of possession that was posted on the premises. ***Id.*** at 48-49. The writ of possession directed Appellees to vacate the premises within eleven days and warned that a failure to vacate would result in an alias writ of possession, "and all force necessary to **eject** you in order to execute the said Writ will be employed." ***Id.***, Exhibit D-1 (emphasis added). The writ also included the following notice: "Judgment was entered for non-payment of rent. If the full amount of the judgment plus court costs is paid on or prior to **the eviction date**, eviction shall not proceed." ***Id.*** (emphasis added).

On June 16, 2022, Appellants obtained an alias writ of possession that was also posted on the premises. ***Id.*** at 49-50, 64. Scott Anderson, chief operating officer for Appellees, testified that when the alias writ of possession was posted, the landlord tenant officer could come any day to padlock the premises, thereby locking Appellees out. ***Id.*** at 64. As a result of the alias

writ of possession, on or about June 30, 2022, Appellees returned the keys to the premises, and left all property inside. ***Id.***

Regardless of how Appellants want to characterize their actions, Appellees were legally evicted from the premises. Moreover, Appellants followed the procedure set forth in the confession of judgment clause of the Lease. Thus, the trial court did not err or abuse its discretion in finding that Appellees were evicted, and, therefore, Appellants are only entitled to damages for unpaid rent through July 1, 2022, when Appellants obtained possession of the property. ***Homart, supra***; ***Ferrick, supra***.

Order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/1/2024